# 𝖂𝖍𝖊𝖊𝖑𝖎𝖓𝖌.

## SAMUEL LOGAN *vs.* WILLIAM DILS.

### January Term, 1870.

1. L., a non resident, owns land in this State. D., a brother-in-law, residing in this State, writes to L. that he would take the land at a fixed price of 10 dollars per acre, or to put his price per acre on the land and he would sell it for what he could above that sum and retain the balance as compensation and for expenses of sale. L. replies by letter that he is willing to take 10 dollars per acre. D. telegraphs that he would take the land, and sent him his two negotiable notes for the whole amount, which L. accepted and retained. Subsequently, and before the notes were due, D. sold the land for 20 dollars per acre. L. refused to make a deed upon D's offering to pay off the notes, but it was agreed that the vendee of D. should pay off the notes, which was done, and the residue of the purchase money on sale between D. and the vendee, should be deposited in bank to await the result of the controversy between L. and D., and that the notes should also be deposited in bank. These notes were subsequently withdrawn from the bank by L., and were in his possession at the bringing of the suit. D. files his bill for a specific performance upon the part of L., charging a sale between L. and himself in the nature of what is called "optional contracts of sale." L. claimed the transaction was one of agency on the part of D. The court below decreed that there was no sale between them, but allowed five dollars per acre as a compensation to D. for his services. L. appeals. HELD:

> That it was a sale of the land between L. and D., at the price of ten dollars per acre; but inasmuch as D., in this court, did not insist on the error of the court below in decreeing that there was no sale, he thereby waived the error in the decree below in that particular, and it was affirmed.

2. A contract is not stamped on its being made, but it is subsequently, after suit brought to enforce it, stamped by the United States collector of internal revenue, and certified accordingly, and it is held that this stamping relieves from the necessity of considering the question of the validity of the contract for want of a stamp.

This was a suit in chancery brought by William Dils against Samuel Logan, in the circuit court of Wood county. The bill was filed at February rules, 1865. It alleged that the complainant resided in Wood county and the defendant in Missouri; that the latter was the owner, in 1864, of several tracts of land in Ritchie and Pleasants counties; that the complainant was then engaged in buying and trading real estate supposed to contain oil or valuable minerals; that he proposed, in a letter to the defendant written September 27th, 1864, to buy the lands, either at a fixed price of ten dollars per acre, or to take the lands at the lowest rate or figures fixed by the defendant, the complainant to sell the land, and the excess above the price to be retained by, or belong to, the complainant, in the nature of what was sometimes called "optional contracts." That the defendant replied to this letter under date of October 7th, that he was willing to take ten dollars per acre; that upon the receipt of this letter the complainant telegraphed to the defendant on the 17th of October, closing with the offer of ten dollars per acre, and drew his two negotiable notes, payable in seventy-five and one hundred days, for 9,395 dollars each, and forwarded them to the defendant, who received and accepted them in part performance of the contract, and requested a deed from the defendant; that on the last mentioned day the complainant sold the lands for twenty dollars per acre; that in a few days the defendant came to Wood county and expressed his gratification at the prospect of getting ten dollars per acre for lands which he had but recently offered at one dollar and fifty cents per acre; that afterwards, in December, 1864, the defendant refused to make a deed to the vendee of the complainant, at the request of the complainant, when the latter was willing to lift his negotiable notes, although not due, but was willing to make a deed to the vendee at the price of ten dollars per acre, adopting the contract of the complainant as his own, but refused to perform the contract with the complainant; that it was then agreed that the vendee should pay off the notes of the com-

plainant, which was done, and that the residue of the money due on the contract between the complainant and the vendee should be deposited in bank to await the result of the controversy between the complainant and defendant, and that it was further agreed that the defendant should make a deed to the vendee for the lands at the price of ten dollars per acre, upon condition that the defendant would deposit the complainant's notes in bank after they were lifted, but that the defendant afterwards took them out of the bank and still retained possession of them, although they were paid off under the agreement. The bill charged that the defendant denied any sale to the complainant, but had several times offered to pay him 10,000 and 12,000 dollars. It asked that the defendant be required to carry out his contract with the complainant, specifically, and that the sum of 18,835 dollars, on deposit in the bank, be decreed to the complainant, and the further sum of 19,000 dollars damages for the non compliance.

The answer set up that the complainant was the brother-in-law of the defendant, and as such had done some business for him as agent in Wood county; that he had been absent for some time from that county, and was not aware of the rise in value of wild lands supposed to be valuable for oil purposes, and not thinking the complainant would conceal important information from him as to the true value of the lands, he wrote the letter of October 7th, 1864, not intending it to be regarded as a contract of sale, but an indication of willingness to take the price named as he was then advised as to the value of the land.

The answer denied any contract for the sale of the lands, and alleged an agency simply in the complainant, and that he had grossly misrepresented, deceived and misled the defendant, and had concealed important information with reference to the sale of the lands, and in violation of his confidential relations, &c.; that he well knew at the time he made the agreement with the defendant that he had already sold the lands at the price of 20 dollars per acre,

and if any contract had been made with the complainant it was void by reason of his fraudulent concealments and misrepresentations. The answer also alleged that the pretended contract was not stamped with a revenue stamp as required by act of congress. The bill set out the letter of the defendant of October 7th, 1864, to which was annexed the certificate of the collector of internal revenue, stating that, believing the instrument to have been issued without being stamped, through inadvertence, and not from any intention to defraud the revenue service, he thereupon caused the proper stamp to be affixed and canceled, on the 7th day of June, 1865.

In October, 1865, the court below decreed that there was no valid contract of sale between the parties, and therefore a specific performance was refused, but the cause was referred to a master to report the compensation for the services in making the sale that was due the complainant, with leave for either party to introduce proof in relation thereto. The master reported in March, 1866, an allowance of ten per centum on the gross sum realized. The complainant excepted to the report. Considerable testimony was taken by the master on the question of compensation, of prominent real estate dealers and others, which was quite conflicting. The court sustained the exceptions and decreed, in June, 1866, that the complainant be allowed the sum of five dollars per acre for services in making the sale, which amounted to 9,120 dollars.

The defendant filed a bill of review, alleging that the subject of the decree last mentioned, i. e., the compensation, was plainly inconsistent with the whole object, scope and design of the bill, and therefore it was erroneous, as the basis of relief granted was not set forth in the bill.

To this bill the complainant demurred, and the demurrer being sustained, it was dismissed.

The defendant appealed to this court.

The evidence upon which the question involved, as to whether it was a sale or not by the defendant to the com-

plaiuant, was mainly letters and a telegram, which are as follows:

"PARKERSBURG, September 27, 1864.

"SAMUEL LOGAN, ESQ.,

        Palmyra, Missouri:

"*Dear Sir:* I have been expecting a letter from you for some time, but have not heard from you but once since you returned from Chicago, then you declined selling your French creek lands. I have not sold any more lands since I last wrote, but have rather a big thing on hand. I have been trying to throw all of yours, Patterson's, and my own into a company's hands, at a big price, and they propose to take the land and pay all it is worth, in cash, and then want us to take stock in the company. It is the way that fortunes have and are being made. I could have made some money out of your Cow creek and Goose creek land, by taking a third party, who is operating with those companies, but you — to oil them right well to get them to work for you. Now how much will you take all around for your land, per acre, and allow me what I can make over, for the contingencies? Will you take 10 dollars per acre for both tracts? Of course cash in hand when the deed is made. I do not know that I can get it, although I have no offer for it yet. Patterson talked to me as if he would be very glad to take that, though he said that you had offered him your half for $1.50 per acre. Now he has authorized me to sell his with yours, if I can make the sale, at whatever rates that I sell yours at. Now put your limit at whatever you will take, allowing me the balance to cover the use of the expenses of sale, &c., and if any purchasers come there after it, do not sell unless you are getting perfectly satisfactory figures. The way that I have been working and figuring for some time, I believe I can make about as much money out of it now as anybody else who does not buy to go into a company. Now if you want to sell it, I think that I can get $10 per acre for it all, especially if I can work it into a company, and perhaps make expense of selling besides. Money

| Jan'y Term, | Logan vs. Dils. | 1870. |
|---|---|---|

is nothing here now with oil men. * * "Write and put your limit on, and if I can gouge those fellows for my own benefit I shall do it.        Yours, truly,

                                                        WILLIAM DILS."

The reply of the defendant to this letter, is as follows:

                                "PALMYRA, Mo., Oct. 7th, 1864.

"WM. DILS, ESQ., Parkersburg:

"*Dear Sir:* Your favor of the 27th September has just been received, after being out 10 days. I wrote yesterday concerning a claim I had in Pleasants county office, on J. H. Henderson; in reference to the French creek and Goose and Cow creek lands, I am willing to take $10 per acre, and if you can get up any kind of an arrangement by which you can skin some of those northern chaps, go on, I am willing. From the tone of your letter I suppose you must have a pretty good show, either to sell it or put it into a company at a good figure. I hope you will be able to make a good sale. Should any purchaser come out here to purchase, of course I would do nothing until I heard from you. This much I would say, however, that before going into a company, you might telegraph to me how you proposed going in, and should I decline, would telegraph you immediately on receipt of your dispatch, or should you have any other private arrangements on hand, and my presence should be needed, I might come on. I leave that all to you. I am perfectly willing to take $10 per acre, should you make a sale. Good deal of excitement still existing all over the State. Hoping soon to hear from you either by telegraph or letter.        Yours, very truly,

                                                        SAM'L LOGAN."

[STAMP. S. R. D., June 7, '65.]

                "COLLECTOR'S OFFICE, 3D DISTRICT, W. VA. ⎱
                        "June 7th, 1865.        ⎰

"Being satisfied that the instrument herewith annexed was not stamped at the time of issuing it through any intention to defraud the United States revenue, but that the

omission was through mere inadvertance, I have, therefore, this day, caused the proper stamp to be affixed and cancelled.                                        S. R. Dawson,

Coll'r 3d Dist. West Va."

{ S. R. Dawson,
COLLECTOR INT. REV.
3D DISTRICT, W. VA. }

The telegram of the complainant in response to this, is as follows:

"Palmyra, Oct. 18, 1864.
"[By telegraph from Parkersburg, Va., Oct. 18, 1864.]
"To Samuel L. Logan,

"Sir:—I will take your Trunk creek and Goose creek land at your offer, ten (10) dollars per acre, and have sent my negotiated note to you on seventy-five (75) and one hundred (100) days, for the amount, and will send draft for five hundred (500) dollars, to be credited on the first note. Send me the deeds immediately, reserving lien till paid. Answer immediately as I have to go away. I will write in full.
                                        Wm. Dils."

There were three other letters of the complainant filed with the answer, written respectively on the 7th, 10th and 14th of October, all urging the defendant to close the matter, as "oil men" could not wait; to execute papers and deeds, as the "oil fever" might go down. The last, written October 14th, contains this expression: "If you want to sell it to me, as I propose, send on the deeds as soon as possible; if not, send the power authorizing me to make the deed, and I will sell it for you and make you grease me well for it."

Hon. Geo. H. Loomis, judge of the circuit court of Wood county, presided on the hearing of the cause.

*J. M. Jackson* and *D. Lamb* for the appellant.
*Lee* and *Hutchinson* for the appellee.

BROWN, *President.*

I have failed to find, in the facts of this cause, proof to satisfy my mind of the existence of the relation of principal and agent, or any relation of trust and confidence, other than kinship between the appellant and appellee, relative to the land in question, at the date of the letter of September 27th, 1864, by the appellee Dils to the appellant Logan.

In the letter of Dils to Samuel Logan, of September 27th, 1864, and Logan's reply thereto, of October 7th, 1864, and Dils' response by telegraph, of October 18th, 1864, and the receipt and retention by Logan, of the notes for the price asked by him, which were sent him by Dils, with the other evidence in the cause, I think it is clearly manifest what the parties understood and intended. One had land, and the other had facilities for selling it at a speculative price. One said, in brief, fix your price, and I will sell your land if I can, at that price, and as much more as I can get, taking the chances for my compensation in the excess above the limits you thus prescribe. The other, in effect, said in response, I will take 10 dollars per acre, and you can sell it at your own cost at that price, and as much more as you can get, finding, however, your sole compensation for services and costs in the excess you may be fortunate enough to obtain, and on receipt of the price, I will convey with general warranty to the extent of the amount received by me.

It was not in the contemplation of the parties, that Dils should become the agent, in the ordinary sense of the term, of Logan, and bound as such to disclose the knowledge he might acquire, or be controlled by the principal in the mode of effecting the contemplated sale. But it is very manifest, that it was their intention and understanding to make what is popularly called "an optional contract," in which the party giving and the party receiving the option, stand to each other in the double relation of seller and buyer, and principal and agent. In the latter relation, the party receiving the option and acting strictly within the prescribed author-

ity, may make sale of the land and bind the principal to execute the contract; and in the former relation he is not bound to make known either his information or the mode of his proceeding. The price being fixed, as respects the vendor, he has no interest beyond that in the subject matter. His interest in having the sale effected being secured by being allied with the interest of the party receiving the option, whose only remuneration and indemnity is in the excess of price to be obtained by his efforts.

Taking them together, Dils' letter of September 27th and Logan's reply to it, and the sale made by virtue of it, and the receipt of the prescribed price of 10 dollars per acre by Samuel Logan from the purchaser, the result, in my opinion, was a complete contract by which Dils became entitled to the excess, as the product, no less than the reward of his own efforts.

The bill and answer together set forth the said letters and sale, and the prayer is for specific execution, and the payment of the said excess of price, and for general relief. It is true, the bill draws another conclusion from the same facts, and charges it to be a sale direct or absolute from the defendant Logan to the complainant Dils, for 10 dollars per acre, and a successive sale by him to the ultimate purchaser, William A. Logan, for 20 dollars per acre. And I am free to confess that I think this view of the case, justified by the subsequent conduct of Samuel Logan, who may be taken to have acquiesced in, and assented to, the modified acceptance of his offer as stated in complainant's telegram of October 18th, 1864, by retaining and refusing to deliver up the notes of complainant for the stipulated price of 10 dollars per acre, and also by his refusal to make the conveyance with general warranty for the whole amount of the purchase money, which he should have done on his own pretension that Dils acted merely as his agent in making the sale at 20 dollars per acre.

I think, therefore, that in either aspect of the case, the circuit court erred in refusing to the complainant the full

relief prayed for, but this error is not insisted on by the appellee, and the appellant has no right to complain of it, as it is an error in his favor, and not against him.

The bill of review, which was rejected, was based on the assumption that there was no such contract as stated, and that therefore the prayer for specific execution and for general relief would not warrant the relief granted, of compensation for services rendered as agent merely.

But in the view above taken of the contract resulting from the facts stated in the pleading, I think it was not only competent to the court to grant the relief it did, but the entire relief also, as claimed by the complainant, and to which he was entitled in either aspect of the case.

It is also objected that the contract was not stamped, and was therefore void. A satisfactory answer to the objection is, that it was stamped by the United States collector of internal revenue, and his certificate thereof endorsed on the letter of October 7th, 1864, which relieves from the necessity of considering the question of validity for want of a stamp.

This view of the case in effect disposes of all the objections taken by the appellant to the decree of the court below; and the error as against the appellee, being waived, the decree should therefore be affirmed, with costs and damages to the appellee.

MAXWELL and BERKSHIRE, J. J.  Without concurring in all the reasons of the President, concurred in the conclusion that the decree should be allowed to stand.

DECREE AFFIRMED.